UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARS WADE KEROTA,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                                    Respondents. | Case No.:  3:26-cv-00140-RBM-BLM<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 1, 2]** |

Pending before the Court are Petitioner Fars Wade Kerota's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") (Doc. 1) pursuant to 28 U.S.C. § 2241 and Motion and Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion") (Doc. 2).  The Petition and TRO Motion seek the same relief: Petitioner's release from detention.  (Doc. 1 at 14–15; Doc. 2 at 1–2.)[1]  For the reasons set forth below, the Petition is **GRANTED**.

---

[1]  The Court cites the CM/ECF electronic pagination unless otherwise noted.

1

# I.    BACKGROUND

**A.    Factual Background**

Petitioner was born in Iraq. (Doc. 1 at 3.) He "also has status in the Netherlands." (Doc. 7-1 [Declaration of Deportation Officer Hugo Lara Ramirez ("Ramirez Decl.")] ¶ 3.) Petitioner applied for admission into the United States at the San Ysidro port of entry on October 12, 2014, hoping to seek specialized healthcare for his daughter, who had a rare form of brain cancer. (*Id.* ¶ 4; Doc. 1 at 3.) He was issued an expedited removal order and detained by Immigration and Customs Enforcement ("ICE") pending a credible fear interview. (Ramirez Decl. ¶ 4.) United States Citizenship and Immigration Services conducted the interview, determined that Petitioner had a credible fear of returning to Iraq, and issued him a Notice to Appear under Immigration and Nationality Act section 212(a)(7)(A)(i). (*Id.*)

On February 27, 2015, Petitioner was granted asylum by an immigration judge and released from ICE custody. (*Id.* ¶ 5 (citing Doc. 7-2).) On or about May 15, 2017, Petitioner was convicted of making false statements to obtain an immigration benefit under 18 U.S.C. § 1546. (*Id.* ¶ 6.) The Department of Homeland Security then moved to reopen Petitioner's removal proceedings to revoke asylum based on the conviction. (*Id.* ¶ 7.) The motion was granted, and on October 4, 2018, an immigration judge ordered Petitioner removed to the Netherlands. (*Id.* ¶ 8 (citing Doc. 7-2 at 12).) Petitioner timely appealed the removal order, and the Board of Immigration Appeals ("BIA") dismissed his appeal on July 7, 2021. (*Id.*) Petitioner appealed the BIA decision with the Ninth Circuit Court of Appeals, which dismissed his appeal on March 16, 2023. (*Id.* ¶ 9.) Because ICE was unable to remove him to the Netherlands, Petitioner was released on an Order of Supervision at some point after he was ordered removed. (Doc. 1 at 19 [Declaration of Fars Kerota] ¶¶ 3, 5.)

On March 20, 2023, Petitioner was enrolled in the Compliance Assistance Reporting Terminal ("CART") and scheduled to report to ICE annually. (Martinez Decl. ¶ 10.) On June 18, 2025, Petitioner's CART reporting was amended so that he would have to report

3:26-cv-00140-RBM-BLM

to ICE every six months.  (*Id.* ¶ 10.)  ICE detained Petitioner at his required check-in on September 30, 2025. (*Id.* ¶ 12.)  ICE provided a Notice of Revocation of Release, but "[a]n informal interview was not provided." (*Id.* ¶ 12; Doc. 7-2 at 2.)  Since Petitioner has been detained, "ICE has worked expeditiously to obtain a travel document from the Netherland[s] government.  Should the Netherland[s] government deny the request for a travel document, [ICE] will attempt to seek a third country for removal."  (Ramirez Decl. ¶ 13.)

**B.      Procedural Background**

On January 9, 2026, Petitioner filed the Petition (Doc. 1) and the TRO Motion (Doc. 2).  On January 12, 2026, the Court ordered Respondents to show cause why the Petition and TRO Motion should not be granted by filing a written response.  (Doc. 3.)  On January 20, 2026, Respondents filed their Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response").  (Doc. 7.)  On November 24, 2025, Petitioner filed his Traverse in Support of Petition for Writ of Habeas Corpus and Reply in Support of Motion for Temporary Restraining Order ("Reply").  (Doc. 8.)

## II.      LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.      DISCUSSION

Petitioner argues that his detention unlawfully violates the regulations in 8 C.F.R. §§ 241.4(l) and 241.13(i), and the Supreme Court's decision in *Zadvydas v. Davis*, 533

3

U.S. 678 (2001). (Doc. 1 at 3–4, 7–14.) Respondents argue that: (1) Petitioner's detention falls within the six-month period presumptively reasonable under *Zadvydas*; (2) but even if it did not, Petitioner "cannot show that there is no significant likelihood of removal in the reasonably foreseeable future;" (3) although "there is no evidence an informal interview was provided," Petitioner has not established prejudice; and (4) "[t]o the extent Petitioner is challenging ICE's decision to detain him for the purpose of removal, such a challenge is precluded by [8 U.S.C. § 1252(g)]." (Doc. 7 at 3–7.)

The Court finds that 8 U.S.C. § 1252(g) does not preclude jurisdiction and Respondents violated the regulations in 8 C.F.R. §§ 241.4(l) and 241.13(i).

**A.     Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Respondents argue that the Court cannot hear this Petition because 8 U.S.C. § 1252(g) precludes jurisdiction. (Doc. 7 at 7.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order. Rather, he challenges Respondents' "detention [of Petitioner] in violation of his regulatory and due process rights." (Doc. 8 at 4.) He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, —F. Supp. 3d —, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025)

(emphasis in original); *see also United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Therefore, § 1252(g) does not strip the Court of jurisdiction.

## B. Agency Regulations

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing the required prompt interview. (Doc. 1 at 7–10.) Respondents concede that Petitioner did not receive an interview but argue that the regulatory violation did not prejudice Petitioner. (Doc. 7 at 6–7.)[2]

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. §§ 241.4 and 241.13. Under both regulations, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

Petitioner was taken into ICE custody on September 30, 2025. (Martinez

---

2   In light of the Court's finding that Respondents violated agency regulations by not providing a prompt interview, the Court declines to reach the Parties' arguments regarding whether Petitioner received sufficient notice of, and an opportunity to respond to, the reasons for revocation of his release.

3:26-cv-00140-RBM-BLM

Decl. ¶ 12.)   Despite the requirement that Petitioner be afforded "an initial informal interview promptly after his or her return to Service custody," he has not been interviewed in the nearly four months since then. (*Id.*)  This violates the prompt interview requirement. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (granting petition because an informal interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . . prompt").

Respondents argue that even though ICE violated agency regulations, Petitioner "has not established prejudice nor a constitutional violation."  (Doc. 7 at 6 (citing *Brown v. Holder*, 763 F. 3d 1141, 1148–50 (9th Cir. 2014) ("[T]he mere failure of an agency to follow its regulations is not a violation of due process."); *United States v. Tatoyan*, 474 F.3d 1174, 1178 (9th Cir. 2007) ("Compliance with . . . internal [customs] agency regulations is not mandated by the Constitution.")).)  The Court disagrees.

"[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [] those that do not."  *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).  "A violation of the first type of regulation . . . implicates due process concerns even without a prejudice inquiry."  *Id.* (holding that where "the regulation violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process violation").  "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process."  *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025).  Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry."  *Raya-Vaca*, 771 F.3d at 1205.

But even if that were not the case, Petitioner suffered sufficient prejudice.  In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation."

*United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of §§ 241.4 and 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id.* Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). ICE deprived Petitioner of these due process protections when it failed to provide him with a prompt interview to respond to the reasons for revocation of his release. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations.") Most district courts have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*, — F. Supp. 3d —, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025); *see, e.g., K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025) ("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels

7

3:26-cv-00140-RBM-BLM

[the petitioner's] release."). This Court reaches the same conclusion: because Respondents violated the prompt interview requirement in 8 C.F.R. §§ 241.4 and 241.13, the Petition is **GRANTED**.

### IV.   CONCLUSION[3]

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Respondents **SHALL NOT** re-detain Petitioner absent compliance with the requirements in 8 C.F.R. §§ 241.4 and 241.13, which include, at a minimum, pre-deprivation notice describing the change of circumstances justifying Petitioner's re-detention and a prompt informal interview.[4]

3. The TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE:  January 23, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3]  In light of the Court's Order, the Court does not address the other claims in the Petition.

[4]  *See Espinoza v. Kaiser*, Case No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025).